**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff,**<br>**v.**<br>**CARLOS CUNNINGHAM,**<br>**Defendant.** | **No. 25-cr-00363-DLF-ZMF** |

## REPORT AND RECOMMENDATION

Carlos Cunningham seeks the suppression of physical evidence recovered during a warrantless search. For the reasons set forth herein, the Court recommends DENYING Mr. Cunningham's motion.[1]

## I. FACTUAL BACKGROUND

On November 14, 2025, officers from the Metropolitan Police Department ("MPD") and federal agencies were on patrol in Southeast Washington, D.C. *See* Complaint 2, ECF No. 1. As officers drove along the 3400 block of 11th Place, they spotted a silver Nissan Versa. *See id*. Officers noted that this car was "parked and idling" and "did not display a front tag." *Id.* Officers proceeded to park alongside the car and approached the driver and passengers to "advise them of the 'No Front Tag' violation.'"[2] *Id.* "More than three" police cars surrounded the parked car. Sep.

---

[1] Pursuant to the Local Rule 72.3(b), any party who objects to the Report and Recommendation must file a written objection within fourteen days. The written objections must specifically identify their objection and the basis for it. Failure to file timely objections may waive the right of appeal from an order of the District Judge that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

[2] Officers subsequently issued a Notice of Infraction ("NOI") to the driver. *See* Complaint at 2.

14, 2026, Hr'g Tr. 13:25–14:2.

MPD Officer Zambrano-Mora activated his body worn camera ("BWC") during the encounter with the parked car. *See* Complaint at 1–2. Officer Zambrano-Mora walked to the front passenger seat, where Mr. Cunningham was sitting. *See* Complaint at 2. Within seconds of greeting the occupants of the parked car, Officer Zambrano-Mora spotted a "circular bulge" inside Mr. Cunningham's pants which Officer Zambrano-Mora identified as a firearm. Complaint at 2–3; *see* Def.'s Mot. to Suppress 2, ECF No. 16. Officer Zambrano-Mora instructed Mr. Cunningham not to reach for the firearm and "opened the front passenger door to secure the firearm and detain [Mr. Cunningham]." Complaint at 3. Officers recovered a pistol and large drum magazine from Mr. Cunningham's person. *Id.* Officers "confirmed that [Mr. Cunningham] did not have a license to carry a handgun in the District of Columbia." *Id.* at 5. Additionally, officers learned that Mr. Cunningham was previously convicted of a felony offense, and thus, was prohibited from possessing a firearm and ammunition. *See id.*

During the stop, officers also "observed smoke and smelled the odor of burnt marijuana coming from the vehicle." *Id.* at 2. After removing Mr. Cunningham from the car, officers found a lit marijuana cigarette in the front passenger door pocket. *See id.* at 4. This was where Mr. Cunningham had been seated. *See id.* Additionally, officers discovered three pills after conducting a search incident to arrest of Mr. Cunningham. *See id.*

## II. PROCEDURAL HISTORY

On November 15, 2025, the Government filed a criminal complaint against Mr. Cunningham. *See* Complaint at 1. On November 19, 2026, the grand jury returned an indictment charging Mr. Cunningham with violating 18 U.S.C. § 922(g)(1). *See* Indictment 1–2, ECF No. 9. On March 24, 2026, Mr. Cunningham filed a motion suppress physical evidence,

including a "firearm and any other property [] seized by the government" during the November 14, 2025 search of Mr. Cunningham. Def.'s Mot. to Suppress at 1. On May 20, 2026, the Government filed its opposition. *See* U.S. Memo. in Oppo. to Def.'s Mot. to Suppress 1, ECF No. 23 ("Government's Oppo."). On May 29, 2026, Mr. Cunningham filed his reply. *See* Def.'s Reply to Government's Opposition to Mot. to Suppress 1, ECF No. 25. On August 11, 2026, Judge Friedrich referred this case to the undersigned for full case management. *See* Min. Order (Aug. 11, 2026). On September 8, 2026, Mr. Cunningham filed a supplement to his motion to suppress. *See* Def.'s Supp. to Mot. to Suppress 1, ECF No. 51 ("Def.'s Supp.").

On September 11, 2026 and September 14, 2026, the undersigned presided over a suppression hearing. The hearing included witness testimony, a review of BWC footage, and argument. *See* Min. Entries (Sep. 11, 2026 and Sep. 14, 2026).

## III. LEGAL STANDARD

The Fourth Amendment of the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (internal quotation marks omitted). "If the government oversteps that constitutional boundary, the remedy is generally exclusion—courts must suppress the unlawfully obtained evidence and any derivative evidence tainted by the violation unless an exception applies." *United States v. Green*, 149 F.4th 733, 743 (D.C. Cir. 2025). Suppression bars prosecutors from using "the primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality." *Utah v. Strieff*,

579 U.S. 232, 237 (2016) (internal quotation marks omitted).

To suppress illegally obtained evidence, "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). Specifically, the defendant bears the burden to establish that officers conducted a warrantless search or seizure in violation of the defendant's Fourth Amendment rights and there is a causal nexus between the Fourth Amendment violation and the evidence the defendant is seeking to suppress. *See United States v. Bryant*, No. 25-cr-97, 2025 WL 3484914, at *2 (D.D.C. Dec. 4, 2025). If a defendant can make a sufficient showing of the prima facie case for exclusion, the burden then shifts to the government to demonstrate that the search or seizure was reasonable. *See id.*; *see also United States v. Jones*, 1 F.4th 50, 52 (D.C. Cir. 2021).

A seizure within the meaning of the Fourth Amendment occurs "when physical force is used to restrain movement or when a person submits to an officer's 'show of authority.'" *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014). A "show of authority" exists when a "reasonable person" would not believe that they are "free to leave" the encounter with law enforcement given the totality of the circumstances. *United States v. Castle*, 825 F.3d 625, 632 (D.C. Cir. 2016). Stops constitute a Fourth Amendment seizure. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968). Accordingly, officers must at least have a reasonable and articulable suspicion, based on objective facts, that a person was engaging in criminal activity. *See id.* at 21–22; s*ee also Brown v. Texas*, 443 U.S. 47, 51 (1979).

## IV. ANALYSIS

### A. Officers had Probable Cause to Seize and Search Mr. Cunningham

#### *i. Relevant Authority*

Mr. Cunningham primarily relies on *United States v. Price*, No. 22-cr-4, 2022 WL 16713060 (D.D.C Nov. 3, 2022). There, Judge Cobb held that officers unlawfully seized the defendant by blocking a parked car and preventing Price from leaving. *See Price*, 2022 WL 16713060, at *4–5. Officers in *Price* stated that they stopped the car because the "tags did not come back to a registered vehicle, indicating a potential code violation" and that officers "saw a 'plume' of white smoke-. . . that they thought was marijuana." *Id.* at *2. Judge Cobb determined that the record did not support the government's bases for stopping the defendant. *Id.* at *5. The BWC footage and officer testimony indicated that officers "called in the [car's] license plates *after* the officers boxed in the [car]" and "[t]he videos do not show any white smoke." *Id.* at *5–6.

#### *ii. The Missing Vehicle Front Tag Provided Officers with Probable Cause to Seize and Approach the Parked Car to Issue a NOI*

Here, multiple officers surrounded the car such that the "idling car wasn't able to leave the scene at that moment." Sep. 14, 2026, Hr'g Tr. at 61:15–62:21. After blocking the car, officers immediately approached the parked vehicle and engaged the occupants. As in *Price*, the "officers' conduct would communicate to a reasonable person on the receiving end of it that they were not free to leave." *Price*, 2022 WL 16713060, at *4; *see United States v. Delaney*, 955 F.3d 1077, 1082 (D.C. Cir. 2020). Thus, as in *Price*, officers seized the car and its occupants. *See* 2022 WL 16713060, at *4.

Officers possessed probable cause to seize the car and its occupants. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, (1996).

Contemporaneous records as well as Officer Zambrano-Mora's testimony demonstrate that officers observed the car "parked and idling" without a front plate *prior* to the seizure. Complaint at 2. Specifically, BWC footage presented at the hearing confirmed Officer Zambrano-Mora could see the missing front plate. *See* Sep. 14, 2026 Hr'g, Gov't Ex. 1, BWC Footage ("Gov't Ex. 1"). The missing front plate gave officers "probable cause to believe a traffic violation was being committed, and thus to stop the car." *United States v. Hough*, 944 F. Supp. 20, 22 (D.D.C. 1996) (holding that officers had probable cause to stop a car driving without an inspection sticker).[3] Because the officers observed and noted the basis for the stop prior to the seizure, *Price* does not apply. *See cf.* 2022 WL 16713060, at *5–6.

Mr. Cunningham asserts that his seizure was a pretextual stop to investigate a shooting that occurred earlier in the day. "However, even if this is true, use of a traffic violation as pretext for the stop does not require suppression of evidence." *Hough*, 944 F. Supp. at 22. "If the officer observed the missing [plate] before the stop, he had probable cause to make the stop, regardless of any ulterior motive." *Id.* (citing *Whren*, 517 U.S. at 812). Moreover, "even if the traffic stop was a pretext for the search, the officers' subjective intent was irrelevant; under the Fourth Amendment, the stop was lawful because there was probable cause to believe the driver had committed a traffic violation." *United States v. Bookhardt*, 277 F.3d 558, 565 (D.C. Cir. 2002). Mr. Cunningham

[3] At the suppression hearing, defense counsel raised for the first time that the car was registered in Virigina, where the absence of a front license plate may not violate Virginia law. *See* Sep. 14, 2026, Hr'g Tr. at 117:23–119:5. That fact does not bear on the outcome of this decision. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. And a reasonable mistake of law can still justify a traffic stop. *See Heien v. North Carolina*, 574 U.S. 54, 68 (2014) (finding that it was "objectively reasonable for an officer" to think that the defendant's faulty right brake light was a violation of North Carolina law, even though the law's reference to "rear lamps" did not actually include brake lights). Any mistake that occurred here was reasonable given that the absence of a front license plate violates Washington, D.C. law.

presents no case law to the contrary, nor is the Court aware of any.

*iii. Officer Observations of the Smoke and Smell of Marijuana Provided Probable Cause to Seize and Search Mr. Cunningham*

Mr. Cunningham argues that officers separately needed probable cause to seize and search his person and the car. *See* Sep. 14, 2026, Hr'g Tr. at 115: 17–20; 119:4–126:3; *see also* Sep. 10, 2026, Hr'g Tr. at 15:12–17:21 (defense counsel arguing about bases of probable cause for officers to seize and search Mr. Cunningham). Regardless of whether this is true, law enforcement may frisk vehicle passengers for officer safety. "To justify a patdown of the driver or a passenger during a traffic stop, . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Here, within seconds of interacting with Mr. Cunningham, Officer Zambrano-Mora spotted a "circular bulge" which Officer Zambrano-Mora identified as a firearm. Complaint at 2–3; *see* Sep. 14, 2026, Hr'g Tr. at 28:2–21. Officer Zambrano-Mora credibly testified to this at the hearing. *See* Sep. 14, 2026, Hr'g Tr. at 28:2–30:19. And the BWC supports his testimony. *See* Gov't Ex. 1. Viewing the pistol and large drum magazine established "sufficient indication [Mr. Cunningham] might be armed and dangerous to justify a protective search for weapons."[4] *United States v. Vinton*, 594 F.3d 14, 20 (D.C. Cir. 2010).

The visible firearm was not the only basis for probable cause. Upon approaching the parked

[4] "[T]he mere fact that a suspect is in possession of a handgun, without more, is not sufficient to provide reasonable, articulable suspicion." *Quarles v. United States*, 363 A.3d 153 (D.C. 2026), *as amended* (Sept. 3, 2026); *see United States v. Watson*, 900 F.3d 892, 896 (7th Cir. 2018). Indeed, "[p]ossession of a firearm by most people is not a crime." *United States v. Mangum*, 100 F.3d 164, 171 n.11 (D.C. Cir. 1996). As such, police officers cannot *Terry* stop a citizen solely based on that citizen carrying a concealed firearm. *See United States v. Wilson*, 143 F.4th 647, 656–657 (5th Cir. 2025). However, when officers have probable cause to stop a citizen for other reasons, officers can conduct a protective search for weapons. *See Arizona v. Johnson*, 555 U.S. at 327; *see also Vinton*, 594 F.3d at 20. That is what happened here.

vehicle, officers smelled marijuana and saw smoke emanating from the passenger side of the car. *See* Sep. 14, 2026, Hr'g Tr. at 20:6–21:12; 27:2–22. The "incriminating character" of the smell and smoke of marijuana was "immediately apparent" to officers when approaching the car. *Horton v. California*, 496 U.S. 128, 136 (1990); *see* Complaint at 2–4. Officer Zambrano-Mora credibly testified to this at the hearing. *See* Sep. 14, 2026, Hr'g Tr. at 20:6–21:12; 27:2–22. And the recovery of a lit marijuana cigarette in the front passenger door pocket further corroborates his testimony. *See* Complaint at 4. "[T]he smell of burnt marijuana emanating from the vehicle provided probable cause to justify the [officers'] search of the vehicle." *United States v. Jackson*, 167 F. App'x 812, 813 (D.C. Cir. 2005); *see United States v. Sheffield*, 799 F. Supp. 2d 22, 31–32 (D.D.C. 2011), *aff'd*, 832 F.3d 296 (D.C. Cir. 2016) (collecting cases finding that "the smell of marijuana provided officers probable cause to search a vehicle."). Accordingly, officers had probable cause to search Mr. Cunningham and the vehicle compartments. *See Hough,* 944 F. Supp. at 23.

## V. CONCLUSION

Officers lawfully seized the firearm and other physical evidence on November 14, 2025. "Because [officers] lawfully stopped [Mr. Cunningham], there is no poisonous tree from which poisonous fruit could fall." *United States v. Tucker*, 12 F.4th 804, 814 (D.C. Cir. 2021). As such, the undersigned recommends denying the motion to suppress.

Zia M.Faruqui

Digitally signed by Zia M.Faruqui
Date: 2026.10.21 20:28:40 -04'00'

HON. ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE